OPINION OF THE COURT
Per Curiam.
The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a verified petition, dated February 3, 2010, containing six charges of professional misconduct. The respondent served an answer dated May 24, 2010.
At all times hereinafter mentioned, the respondent maintained two attorney escrow accounts at Commerce Bank, account No. xxxxxx4166, entitled IOLA/Law Offices of Anthony C. Donofrio PLLC (hereinafter the first escrow account), and account No. xxxxxx3634, entitled IOLA/Donofrio & Associates PC (hereinafter the second escrow account).
Charge one alleges that the respondent misappropriated client funds entrusted to him, in violation of former Code of *66 Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On or about March 23, 2006, the respondent deposited the sum of $85,000 into the first escrow account, representing a portion of a personal injury settlement of his client, Michael T. Bauer. Following that deposit, the balance in the first escrow account was the sum of $85,001.19.
From March 24, 2006, through April 21, 2006, the balance in the first escrow account fell below the sum of $85,000, which the respondent was required to safeguard on behalf of Bauer. On or about April 24, 2006, the respondent deposited an additional sum of $21,000 into the first escrow account, representing additional settlement funds received on behalf of Bauer.
After deducting disbursements and legal fees, Bauer was entitled to receive the sum of $69,713 out of a total settlement of $106,000.
From April 24, 2006, through June 16, 2006, the balance in the first escrow account fell below the sum of $69,713, which the respondent was required to safeguard on behalf of Bauer. At all times relevant herein, no money was deposited into the second escrow account on behalf of Bauer.
On or about June 16, 2006, the respondent wired the sum of $6,500 from the second escrow account to Bauer, as an advance to be deducted from the sum of $69,713 he was entitled to receive. The wire transfer from the second escrow account depleted the funds of other clients which were being maintained in that account.
On June 27, 2006, the sum of $75,000 was wired into the first escrow account. On or about June 28, 2006, the respondent wired the sum of $63,213 from the first escrow account to the account of an attorney representing Bauer in his home state of Missouri, representing the balance of the funds the respondent was required to maintain on behalf of Bauer.
Prior to issuing to Bauer the money he was entitled to receive from his personal injury settlement, the respondent depleted the funds by paying some of the money to other clients and by transferring some of the money into his operating account.
Charge two alleges that the respondent misappropriated client funds entrusted to him, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On April 18, 2006, the respondent deposited the sum of $7,500 into the second escrow account, representing a personal injury *67 settlement of his client, Kathleen DeSousa. After disbursements and legal fees, the respondent was required to maintain the sum of $4,342.37 on behalf of DeSousa.
The respondent issued check No. 1367, dated June 14, 2006, to DeSousa, in the sum of $4,342.37, from the second escrow account. On June 26, 2006, check No. 1367 was presented for payment and was paid against insufficient funds.
From the time DeSousa’s settlement proceeds were deposited into the second escrow account on April 18, 2006, through the time the respondent’s check No. 1367 was presented for payment on June 26, 2006, the balance in the second escrow account fell below the sum of $4,342.37, which the respondent was required to safeguard on behalf of DeSousa.
The respondent depleted DeSousa’s funds for purposes other than that for which they were intended, including paying other clients money he was required to safeguard on her behalf.
Charge three alleges that the respondent misappropriated client funds entrusted to him, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On October 12, 2006, the respondent deposited the sum of $150,000 into the first escrow account, representing a disability settlement received on behalf of his client, Sean Cotter. After deducting expenses and legal fees, Cotter was entitled to receive $98,366.67.
The respondent issued check No. 1349, dated January 4, 2007, to Cotter in the sum of $98,366.67. Check No. 1349, which was presented for payment on January 12, 2007, was returned for insufficient funds.
From October 12, 2006, when the settlement proceeds were deposited into the first escrow account, through January 12, 2007, when check No. 1349 was presented for payment, the balance in the first escrow account fell below the sum of $98,366.67, which the respondent was required to safeguard on behalf of Cotter.
On January 16, 2007, after depositing other funds into the first escrow account, the respondent’s check No. 1349 to Cotter was re-presented for payment and cleared the account.
Prior to issuing to Cotter the money he was entitled to receive from his settlement proceeds, the respondent depleted Cotter’s funds by paying some of the money to other clients and by transferring some of the money into his operating account.
*68 Charge four alleges that the respondent misappropriated client funds entrusted to him, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On May 9, 2006, the respondent deposited into the first escrow account the sum of $110,000, representing a personal injury settlement of his client Thi Larcher-Muhr. After deducting disbursements and legal fees, Larcher-Muhr was entitled to receive the sum of $71,499 from her settlement proceeds.
From May through December 2006, the balance in the first escrow account fell below the sum of $71,499, which the respondent was required to safeguard on behalf of Larcher-Muhr.
The respondent depleted Larcher-Muhr’s settlement funds by paying some of the money to other clients and by transferring some of the money into his operating account.
On December 7, 2006, the respondent deposited the sum of $120,000 into the first escrow account, which represented money he received as settlement proceeds on behalf of clients Mary Sye Holcomb and Holden Rigby. The respondent used those funds to pay Larcher-Muhr the $71,499 she was entitled to receive.
Charge five alleges that the respondent failed to preserve funds entrusted to him as a fiduciary, in violation of former Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).
On April 22, 2005, the respondent’s clients, Thomas Piccirillo and Patricia Piccirillo, wired the sum of $9,000 into the first escrow account for title company costs relating to a real estate closing.
On April 22, 2005, the respondent transferred the sum of $9,000 from the first escrow account into his operating account.
At the Piccirillos’ closing on April 25, 2005, the respondent issued check No. 1226 from his first escrow account in the sum of $9,000, payable to Ultimate Abstract Services, Inc., on behalf of the Piccirillos. On or about May 4, 2005, check No. 1226 was paid against insufficient funds.
Charge six alleges that the respondent engaged in conduct which adversely reflects on his fitness to practice law, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications set forth in charges one through five.
Based upon the evidence adduced, including the respondent’s admissions, charges one through six were properly sustained by *69 the Special Referee. The Grievance Committee’s motion to confirm the Special Referee’s report is granted. The respondent’s cross motion to disaffirm the Special Referee’s report is denied.
In determining an appropriate measure of discipline to impose, we note that the respondent is married, with five young children. While he takes full responsibility for his escrow violations, the respondent avers that all of the clients involved herein have received the money to which they were entitled. He asserts, further, that his excessive drinking during the time in question led him to neglect his business, and impacted upon his decision making. Moreover, his lack of experience administrating an office and, more specifically, an escrow account, contributed to his inattention to the operation of his office. However, the respondent’s forensic psychologist offered only generalized testimony concerning the impact of alcohol abuse on “cognition” and “decision making”; he did not meet with or treat the respondent during the relevant period. As the Special Referee ultimately found, “the testimony preponderates in favor of the conclusion that [the] respondent’s inattention to his escrow accounts and the resultant deficiencies were not attributable to a drinking problem.” We have also considered the respondent’s prior disciplinary history, including his one-year suspension by the First Department in 1997, as well as the two letters of caution and one admonition issued to him by the Grievance Committee for the Tenth Judicial District.
Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of two years.
Eng, EJ, Mastro, Rivera, Skelos and Chambers, JJ., concur.
Ordered that the petitioner’s motion to confirm the Special Referee’s report is granted, and the respondent’s cross motion to disaffirm the Special Referee’s report is denied; and it is further,
Ordered that the respondent, Anthony C. Donofrio, is suspended from the practice of law for a period of two years, commencing February 8, 2013, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than August 8, 2014. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR *70 691.10), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,
Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Anthony C. Donofrio, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
Ordered that if the respondent, Anthony C. Donofrio, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).